LOUIS W. HAX et al., Administrators, Appellants, v. MARY S. BURNES et al., Respondents.

Kansas City Court of Appeals, April 6, 1903.

1. **Partnership: DEATH OF PARTNER: AGREEMENT TO CONTINUE.** On the death of a partner ordinarily the partnership ends except for the purpose of winding up its affairs, but the articles of partnership may provide for a continuation thereof after the death of a partner; in such cases the interest of his estate in the partnership continues.

2. ———: CONTINUANCE AFTER DEATH OF PARTNER: GUARANTY OF NOTE: CORPORATION. Articles of partnership provided that the death of a partner should not dissolve the partnership, and also that a majority of the partners could con-

vert the partnership into a corporation. This latter was done, to the great benefit of the partnership, and the estate of a deceased partner took stock in the corporation. In making the transfer from the partnership to the corporation the partnership indorsed and guaranteed the notes turned over to the corporation. *Held*, the guaranty bound the estate of the deceased partner.

3. ———: DEATH OF PARTNER: GUARANTY. Where a partnership by its articles, continues the partnership after the death of a partner, it can conduct partnership business and guarantee the collection of any asset which it may assign for a valuable consideration.

Appeal from Buchanan Circuit Court—*Hon. W. K. James*, Judge.

REVERSED AND REMANDED (with directions.)

*Johnson, Rusk & Stringfellow* for appellants.

(1) The right to contribution whenever one person discharges more than his just share of a common burden, is well settled. Van Petten v. Richardson, 68 Mo. 379; Mason v. Lord, 37 Mass. 447; Taylor v. Reynolds, 53 Cal. 686. (2) This right exists among partners after the partnership is closed. 7 Am. and Eng. Ency. Law (2 Ed.), 361; Clark v. Miller, 36 Kas. 393; Sambs, Admr., v. Durham, 98 Va. 392; Note to Sambs, Admr., v. Durham, 54 L. R. A. 621. (3) The claim survives the death of the obligor. 7 Am. and Eng. Ency. Law (1 Ed.), 328. (4) After settlement of the estate suit lies against the heirs. Metcalf v. Smith's Heirs, 40 Mo. 572; State ex rel. v. Pohl, 30 Mo. App. 321; Sauer v. Griffin, 67 Mo. 654; Williams v. Ewing, 31 Ark. 229; Cutright v. Stanford, 81 Ill. 240; Cavell v. Westen, 20 Johns. 414; Rece v. May, 9 Ky. 23; Payson v. Hadduck, Fed. Cas. No. 10862 (8 Biss. 293). (5) Solvent partners must stand loss from insolvency of insolvent ones. Van Petten v. Richardson, 68 Mo. 379; 2 Bates on Partnership, sec. 760; 7 Am. and Eng. Ency. Law (2 Ed.), 326, and cases cited.

*Brown & Dolman* for respondents.

(1) Nothing but the most clear and unambiguous language demonstrating in the most positive manner that the deceased partner intended to make his general assets liable for all debts contracted in the continuance of the business after his death, will justify that conclusion. Stewart v. Robinson, 115 N. Y. 328; Delameter v. Hepworth, 115 N. Y. 664; Burwell v. Cawood, 2 How. (U. S.) 560; Brassfield v. French, 59 Miss. 632; Ex parte Garland, 10 Vesey Jr. 109; Bank v. Tracy, 77 Mo. 594; McGrath v. Cowen, 57 Ohio St. 385; Mattison v. Farnham, 44 Minn. 95; 3 Ewell's Lindley on Part. 1060, 1063. (2) The surviving partners, who constituted all the members of the partnership, having "decided" to stop for good and all the entire partnership enterprise, and dispose of its business, that is, its good will, and having stopped the transaction of the partnership banking business, for which the firm was organized, it was dissolved, and it only remained to liquidate and settle its affairs. Ligare v. Peacock, 109 Ill. 94; 17 Am. and Eng. Ency. Law, 1143, and cases cited. And even the act of reviewing a partnership note is a "meaningless and nugatory one." Moore v. Lackland, 52 Mo. 323; Bank v. Eldred, 143 U. S. 293; Bank v. Claggett, 141 U. S. 520; Bank v. Phelps, 86 N. Y. 484; Bank v. Phelps, 97 N. Y. 44; Bank v. Harris, 118 Mass. 147. (3) There is no evidence in this case from which the court was authorized or ought to be permitted to find that Mr. Burnes signed the "extension" upon which this suit is founded, except the testimony of Walker, who is an incompetent witness. He is one of the original parties to the contract the execution of which by Burnes, the deceased party, is in issue, and is interested in the issue because any amount which is recovered in this case will lessen his own confessed liability. Miller v. Slupsky, 158 Mo. 643; Tucker v. Gentry, 67 S. W. 723; Meier v. Theiman, 90 Mo. 433; Saetelle v. Ins. Co., 81 Mo. App. 509; Warfield v. Hume, 91

Mo. App 541, 546; Nowack v. Berger, 133 Mo. 36; Bagnell v. Bank, 76 Mo. App. 121, 125; Beibers v. Boekman, 70 Mo. App. 503; Fink v. Hey, 42 Mo. App. 295. This court will make its own finding, and determine the case according to the preponderance of competent evidence. Supreme Lodge v. Schwarm, 80 Mo. App. 64; Gentry v. Field, 143 Mo. 399; Miss. Val. Trust Co. v. McDonald, 146 Mo. 467.

ELLISON, J.—This action is for contribution. The trial court made a finding of facts and thereupon declared the law thereon to be that plaintiffs could not recover. The action arises on a contract of guaranty whereby a partnership, of which defendant's ancestor is alleged to have been a member, guaranteed the payment of two certain promissory notes made by one Ketchum, and assigned by the partnership. The facts necessary to state appear to be as follows:

On the 27th of June, 1883, Louis Hax (whose administrators are the plaintiffs), James N. Burnes (whose heirs, including the administrator of one of them who is dead, are the defendants), S. A. Walker and John Calhoun by written agreement of that date formed a partnership for a period of five years for the purpose of doing business as a private bank under the name of Schuster, Hax & Co. Of this partnership, James N. Burnes owned twenty-three per cent. The contract of partnership contained this provision: "In case of the death of any one of the partners during the continuance of this contract, the business shall not on account thereof be discontinued, but the interest of said partner shall be kept in the business and the same shall be continued by the surviving partners, and the administrator or executor of such deceased until the expiration of the time agreed upon." On the 12th of June, 1888, shortly before such contract expired, it was extended in writing for another period of five years, which extension contained a provision that a majority of the stockholders

might convert the partnership into a banking corporation at any time they deemed it practicable. It is alleged by plaintiffs that all the partners signed this extension, but defendants deny that James N. Burnes signed it. A few months after the date of this extension on January 29, 1889, Burnes died, his widow, the defendant Mary, becoming his administratrix, and a few months after his death, the surviving partners converted the partnership into a national bank known as the Schuster-Hax National Bank, with a capital stock of $500,000, of which stock the Burnes estate took $50,000. At the organization of this bank, the partnership transferred its assets, including two notes made to it by Ketchum, as aforesaid, the notes upon which this controversy is founded, to such national bank, and upon which the following written endorsements were made: "For value received we hereby assign the within note and guarantee payment of same at maturity or at any time thereafter, waiving demand, protest and notice of non-payment. (Signed) Schuster, Hax & Co."

The partnership received of the national bank for this transfer of its business and assets, $50,000, representing its capital; $60,000 for its surplus, and $50,000 for its good will; making a total of $160,000. Ketchum died and his estate proving to be insolvent, plaintiffs' intestate, Louis Hax, was compelled to pay the note under the guaranty aforesaid and they thereafter instituted this action. Defendant Mary S. Burnes, as administratrix of the Burnes estate, never took active or affirmative part in the management or direction of the partnership. Her passive conduct probably resulting from the fact that the Burnes estate organized itself into a corporation (the heirs being the stockholders) and was managed as such. The administration was closed long prior to the institution of this action.

On the foregoing facts we conclude that the trial court should have found for the plaintiffs instead of defendants. Ordinarily, the death of a partner puts an

end to the partnership, except for certain necessary purposes in winding up its affairs. The prosecution of further partnership business is not permissible. But a partner may by contract provide for a continuation of the partnership business after his death, and that the interest of his estate therein shall not cease. Edwards v. Thomas, 66 Mo. 468; Bank v. Tracy, 77 Mo. 594. The above quoted provision of the contract of partnership undoubtedly provided for a continuation of the partnership. It prevented the ordinary result of dissolution of the partnership which otherwise would have followed the death of Burnes.

The extension of this contract contained an addition to the contract itself, wherein it was provided that the partnership might be converted into a corporation (state or national), whenever a majority of the stockholders so decided. The partnership merged itself into a corporation bank at great profit to the partners on the amounts originally put in by them. In making the transfer of its assets, the partnership guaranteed the payment of the Ketchum notes, as stated. We believe it to be clear that it had the power, in view of the facts stated, to make this guaranty. But in addition to the original power, under the facts it appears that neither the Burnes estate nor any of the heirs ever objected to the transfer. They received the benefits and profits of the transaction and joined in the association which made up the corporation bank, taking a large portion of its stock.

The briefs and arguments of counsel would indicate that the court considered that the surviving partners could not, under the terms of the contract of partnership and its provisions of extension, enter into, or merge into the national bank corporation. Suppose this should be conceded, it would not affect the result which we think should have been reached in the trial court. The fact remains that the partnership survived the death of Burnes. It had the power to transact partnership bus-

iness as before his death. This power included the right to guarantee the collection of an asset which it assigned for a valuable consideration, a consideration which is received and accepted by the members of the partnership, including those who succeeded to Burnes' interest.

But it is said by defendants that the evidence failed to show that Burnes signed the extension. The court found that he did, and we believe there was ample evidence admitted to support the finding.

Our conclusion is that the judgment should be reversed and the cause remanded, with directions to enter judgment for the plaintiffs. The other judges concur.