ESTATE OF SAMUEL MNOOKIN, DECEASED, DORA MNOOKIN, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17210. Promulgated May 12, 1949.

*John H. McEvers, Esq., G. Lee Burns, Esq.,* and *Reece A. Gardner, Esq.,* for the petitioner.

*Gene W. Reardon, Esq.,* for the respondent.

748

OPINION.

Harlan, *Judge*: Petitioner's first contention is that respondent erred in including in decedent's gross income for 1942 the accounts receivable as of January 1, 1942. It maintains that, since respondent was determining Samuel Mnookin's income for 1942, he had no right to include this item, which represented credit sales of prior years.

It is our opinion that on this issue the case at bar is controlled by *Greene Motor Co.*, 5 T. C. 314. In that case the taxpayer had consistently followed an accrual method of accounting. It had, in the years prior to 1939, improperly set up certain so-called special reserves and made additions thereto which were claimed and allowed as deductions on its income tax return for 1938. In auditing the 1939 return the Commissioner added the amounts of these reserves as shown on the taxpayer's books as of December 31, 1938, to its income for 1939. The taxpayer appealed to this Court. It conceded that under the accrual method of keeping its books the so-called reserves were improper deductions and that the amount of $3,149.06, carried by petitioner in the so-called reserves as of December 31, 1938, was never returned as income. It contested, however, the respondent's right to include in its 1939 income amounts claimed as a deduction in its 1938 return and erroneously allowed in that year by the respondent. In supporting the taxpayer this Court said (p. 317):

[Respondent] apparently makes no contention that the amounts deducted as such reserves were income in 1939. He attempts to justify his action, rather, on the ground that if the erroneous deductions are not included in petitioner's gross income for 1939 they will never be taxed. * * * The amounts of the so-called special reserves improperly deducted and allowed in the prior year or years unlawfully reduced taxable income of the petitioner for those respective years only. Those amounts were properly includible in income of the earlier years—not of the taxable year.

In the case at bar Samuel Mnookin had, just as had the taxpayer in *Greene Motor Co.*, *supra*, consistently followed the accrual method of accounting and his books clearly reflected his income. No change in his method of accounting was ever requested or made. In prior years Samuel Mnookin had treated credit sales on a cash basis in his returns. In determining that credit sales should be treated on the accrual basis for 1942, the Commissioner also added the amount of the accounts receivable evidencing unpaid credit sales as shown on Samuel Mnookin's books on January 1, 1942, to his income for 1942, for the reason that if these accounts receivable were not included in Samuel Mnookin's income for 1942 they would never be taxed. We see no more justification for allowing this action on the part of the Commissioner in the case at bar than in *Greene Motor Co.*, *supra*.

Respondent relies on *William Hardy, Inc.* v. *Commissioner* (C. C. A., 2d Cir., 1936), 82 Fed. (2d) 249; *Schuman Carriage Co., Ltd.*, 43 B. T. A. 880; and *C. L. Carver*, 10 T. C. 171; affd. (C. A., 6th Cir.), 173 Fed. (2d) 29. Both *William Hardy, Inc.* v. *Commissioner, supra*, and *Schuman Carriage Co., Ltd., supra*, were destinguished by this Court in *Greene Motor Co., supra*, and they are similarly distinguishable from the case at bar, as is *C. L. Carver, supra.*

In *Schuman Carriage Co., supra*, the taxpayer kept its books on a hybrid basis, i. e., part accrual and part cash, and reported its income in its returns according to the manner in which it kept its books. The Commissioner determined that the method of accounting of the taxpayer did not clearly reflect its income, that its books should be kept and its returns filed on the accrual basis, and that there should be included in its income for 1934 interest collections for that year plus uncollected interest at December 31, 1934. This Court held that the Commissioner had acted within the powers conferred upon him in section 41 of the code.[1]

Both *William Hardy, Inc.* v. *Commissioner, supra*, and *C. L. Carver, supra*, involved adjustments made by the Commissioner as the result of changes in the method of keeping books from the cash to the accrual basis. In the case at bar, as already stated, Samuel Mnookin had consistently followed the accrual method of accounting, and he neither requested nor made any change in that method. Accordingly, neither *William Hardy, Inc.* v. *Commissioner, supra*, nor *C. L. Carver, supra*, is in point.

We therefore hold that respondent erred in including in the gross income of Samuel Mnookin, deceased, for 1942 credit sales for prior years of $130,456.73, which were evidenced by accounts receivable as of January 1, 1942.

Petitioner's second contention is that the respondent erred in including in decedent's income for the period January 1 to December 1, 1943, the amount of $6,436.34 which respondent determined to be petitioner's allocable share of the income of the partnership doing business under the name of Fashion Credit Clothing & Jewelry Co. for the period June 1 to December 1, 1943. Petitioner urges that the articles of partnership as amended provided that upon the death of either partner the partnership and the interest therein of a deceased partner would continue, and not terminate; that because of these provisions the surviving partner was not required to close the partnership

---

[1] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

books, compute the partners' share of the income for the period June 1 to December 1, and file a partnership return for that period; and that, therefore, no income accrued to decedent from the partnership for the period June 1 to December 1 which petitioner was required to report.

The respondent contends that under the partnership agreement as amended the death of decedent dissolved the then existing general partnership, and thereafter, at most, a limited partnership existed, with the surviving partner and the legal representatives or trustees of the deceased partner as members of the new partnership; that the withdrawals made by decedent, to the extent of profits, were in the nature of current receipts of business profits; that these sums were withdrawn by decedent under a claim of right and he was under no obligation to make restitution; that the decedent's estate would not be required to include such business profits in its taxable income under the provisions of section 126 of the code; that a determination that the profits of the partnership business for the period June 1 to December 1, 1943, allocable to the decedent are not taxable to him might readily lead to a situation where this portion of the business profits would escape taxation; and that the decedent's allocable share of these profits is includible in his taxable income.

The pertinent provisions of the Internal Revenue Code are set forth in the margin.[2]

Ordinarily, death dissolves a partnership. But in Missouri and elsewhere it has been held that, where it is provided in the articles that both the partnership and the interest of the partner shall continue after his death, such a provision will be given effect. *Edwards* v.

---

[2] SEC. 126. INCOME IN RESPECT OF DECEDENTS.

(a) INCLUSION IN GROSS INCOME.—

(1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period shall be included in the gross income, for the taxable year when received, of:

(A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent;

(B) the person who, by reason of the death of the decedent, acquires the right to receive the amount, if the right to receive the amount is not acquired by the decedent's estate from the decedent;  *  *  *

\*     \*          \*           \*            \*            \*           \*

SEC. 181. PARTNERSHIP NOT TAXABLE.

Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity.

SEC. 182. TAX OF PARTNERS.

In computing the net income of each partner, he shall include, whether or not distribution is made to him—

\*          \*          \*          \*          \*          \*          \*

(c) His distributive share of the ordinary net income of the partnership  *  *  *

SEC. 188. DIFFERENT TAXABLE YEARS OF PARTNER AND PARTNERSHIP.

If the taxable year of a partner is different from that of the partnership, the inclusions with respect to the net income of the partnership, in computing the net income of the partner for his taxable year, shall be based upon the net income of the partnership for any taxable year of the partnership (whether beginning on, before, or after January 1, 1939) ending within or with the taxable year of the partner.

*Thomas*, 66 Mo. 468; *Hax* v. *Burns*, 98 Mo. App. 707; 73 S. W. 928; *Hidden* v. *Edwards*, 313 Mo. 642; 285 S. W. 462. And in *E. R. Hawkins & Co.* v. *Quinette*, 156 Mo. App. 153; 136 S. W. 246, the court said that "though death ordinarily operates a dissolution of a partnership, it accomplishes naught with respect to that matter in cases such as this one where by an express stipulation in the articles of copartnership the partners have agreed the partnership shall continue." See also *Henderson's Estate* v. *Commissioner*, 155 Fed. (2d) 310; and *Robert E. Ford*, 6 T. C. 499, 501.

Here, the articles of partnership as amended specifically provided:

13. If either partner shall die during the existence of the partnership, neither the partnership nor the interest therein of the deceased partner shall terminate, but shall continue, subject to the terms and conditions hereinafter set forth. * * *

The amended partnership articles clearly manifest an intention that the partnership continue and not terminate upon the death of a partner, and that the surviving partner at that time take over and manage the business without making any change in the method of bookkeeping, the partnership's fiscal year, or the basis of preparing the partnership return. While the general rule is that the death of a partner dissolves a partnership and fixes the date as of which the surviving partners are required to account for the profits (*Guaranty Trust Co. of New York* v. *Commissioner*, 303 U. S. 493), it has been held that the taxable year of a partnership, as far as the surviving partners are concerned, is not affected by the death of a partner where a partnership continues until the winding up of the partnership affairs is completed. *Heiner* v. *Mellon*, 304 U. S. 271; *Mary D. Walsh*, 7 T. C. 205. In *Henderson's Estate* v. *Commissioner*, *supra*, reversing *Estate of Hunt Henderson*, 4 T. C. 1001, the articles of partnership provided that the partnership was to continue for one year after the death of any partner, and the Louisiana code provided that every partnership ends of right by the death of one of the partners, unless an agreement has been made to the contrary. The Circuit Court of Appeals for the Fifth Circuit disagreed with the view of this Court that the partnership terminated with the death of one of the partners and that a new partnership came into being. The Circuit Court, pointing to the provision of the Louisiana code, stated that, while the continuance of the firm after the death of a partner is a legal fiction, a Federal court "should not look askance at legal fictions under state laws so long as it maintains the fiction that a corporation is a citizen of the state of its incorporation," and held that no tax year ended for the partnership with the death of the decedent and that no partnership gain or loss had to be reported for the period immediately preceding death.

In Missouri, where the Mnookin partnership was created and engaged in business, there has never been any statutory provision that

a partnership can continue after the death of a partner if there is an agreement to that effect. However, as heretofore noted, the courts of that state have so held, and under such circumstances we deem it immaterial that the statutes do not contain such a provision. Moreover, consistency would seem to require that, if upon the death of a partner a partnership year does not end for surviving partners, where the only purpose of continuance is to wind up the affairs of a partnership, it should not end for the deceased partner where the partnership agreement provides, as it does in this proceeding, that the firm itself and the interest of a deceased partner shall continue after his death. Following *Henderson's Estate* v. *Commissioner, supra,* we hold that the tax year of the partnership did not end with the death of the decedent, and there was no partnership gain to be included in the return of decedent for the period from June 1 to December 1, 1943.

The fact that decedent had made substantial withdrawals prior to his death does not seem to us to require any different conclusion. These withdrawals were merely advances or borrowings from the partnership funds. Under the parnership agreement they were to be deducted from the share of profits distributable at the close of the partnership fiscal year. We do not share the respondent's concern that earnings attributable to the decedent's share may escape taxation. Under the provisions of section 182, *supra,* the estate of the decedent must include these earnings in its income for 1944, "whether or not distribution is made to" it.

The respondent erred in including $6,436.34 in the income of the decedent for the period January 1 to December 1, 1943.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

OPPER, *J.,* dissenting: I can not distinguish this case from *Schuman Carriage Co., Ltd.,* 43 B. T. A. 880, where likewise a hybrid system of reporting income was disapproved by respondent, and amounts on the books which should have been reported in prior years were included in the current year's income. It is altogether different from *Greene Motor Co.,* 5 T. C. 314, which involved erroneous reserve accounts and was controlled by such cases as *S. Rossin & Sons, Inc.* v. *Commissioner* (C. C. A., 3d Cir.), 113 Fed. (2d) 652.

In *Schuman Carriage Co., Ltd., supra,* we said:

\* \* \* We think that it is immaterial that the stipulated facts in this case show that the petitioner has never recorded in its books of account interest accrued but only interest collected.

\* \* \* The facts are, however, that there was an amount of accrued interest income upon the petitioner's books of account at January 1, 1934, which had never been returned for taxation. Manifestly, this amount must be included

in the gross income of some year. The failure of the petitioner to make its returns consistently upon the accrual basis may place it in an unfortunate position. But for this situation the petitioner is alone to blame.

If we substitute for "interest" the "credit sales" account here in controversy, the identical statements would have to be made in this case. Unless we are prepared to overrule *Schuman Carriage Co., Ltd., supra,* I think it should be followed here.