E. R. HAWKINS & CO. v. STEPHEN QUINETTE, Administrator; E. R. HAWKINS & CO., Appellant; HARRY TROLL, Public Administrator, Respondent.

St. Louis Court of Appeals, April 4, 1911.

1. **PARTNERSHIP: Death of Member: Continuance of Partnership Agreement.** 'A partnership continues after the death of a member until the termination prescribed, if it is expressly so stipulated in the contract of partnership.

2. **——: ——: Continuance of Partnership: Will of Decedent.** The mere direction in the will of a partner that the firm shall continue after his death, in the absence of any stipulation in that regard in the contract of partnership, will not continue the firm, but creates a new firm on the assent thereto of the remaining partners.

3. **——: Dissolution: Bankruptcy.** An adjudication in bankruptcy that a partnership is bankrupt operates as a dissolution of the partnership.

4. **EXECUTORS AND ADMINISTRATORS: Public Administrator: Right to Administer: Assets in Bankruptcy.** On an adjudication in bankruptcy in a federal court in the district of a firm's domicile, the partnership effects came into *custodia legis,* and a judgment of a court in a distant state, in favor of the firm and scheduled as part of the bankrupt estate, was not the subject of administration in the probate court of the state where the judgment was rendered, though the partnership was dissolved by the bankruptcy; and hence the public administrator could not take charge of such judgment as representing the interest of a deceased partner.

5. **——: ——: ——: ——: Reversion to Partners.** Where, under an agreement, confirmed by the bankruptcy court, all the effects of a bankrupt firm, including a judgment held by it, were assigned to parties who advanced money to discharge the firm's debts, there was no reversion of interest to the members of the firm, and hence there was nothing for the

Hawkins & Co. v. Troll.

public administrator, representing the effects of a deceased partner, to take charge of.

6. **BANKRUPTCY: Voluntary Petition: Partnership: Petition not Signed for Deceased Partner.** Where, under a partnership contract, the firm entity continued after the death of a partner, it was competent for the surviving partners alone, without being joined by the executors of the deceased partner, to institute a voluntary proceeding in bankruptcy, and to procure an adjudication which would conclude the whole matter, if those representing the estate of the deceased partner did no more than acquiesce therein.

7. ———: ———: ———: **Right of Partners to File.** When all the partners are living, if a portion of the members of the firm voluntarily file a petition in bankruptcy, the adjudication will be regarded as a voluntary one with respect to all, if it appears their assent was given.

8. **EXECUTORS AND ADMINISTRATORS: Substitution of Public Administrator as Claimant: Judgments: Final Judgment.** Where a partnership presented a demand against an estate being administered and the public administrator was substituted for the claimant firm on the ground it had been dissolved by the death of one of its members, such substitution was a denial of the claimant's right to either prosecute or recover on its demand, and was a final decision as to that matter.

9. ———: ———: **Claim Subsequently Assigned: Right of Original Claimant to Appeal.** Section 1924, Revised Statutes 1909, providing that when an interest is transferred in any pending action, etc., the action shall be continued in the name of the original party, if the party to whom the transfer is made will indemnify the party in whose name the suit is to be continued against all costs and damages that may be occasioned thereby, etc., applies to proceedings in the probate court; and hence where, after a partnership had filed a claim against an estate, the firm's assets were, in the course of bankruptcy proceedings, transferred to a third party, and no move was made to substitute the latter as claimant, the partnership was entitled to appeal from an order substituting the public administrator as claimant, which, in effect, precluded the partnership from recovering on the claim.

Appeal from St. Louis City Circuit Court. — *Hon. Eugene McQuillin,* Judge.

REVERSED AND REMANDED (*with directions*).

*W. ·B.* and *Ford W. Thompson, Fred Armstrong, Jr.* for appellants.

*M. E. F. Pollack* and *P. A. Griswold* for appellants.

(1)    An appeal from the probate court is properly taken in the name of a claimant against an estate, even though after filing the claim and before the appeal the claimant has assigned his claim to another. Sec. 1924, R. S. 1909; McFaul v. Haley, 166 Mo. 56; Asher v. Railroad, 89 Mo. 116; 1 Ency. L. & P· (New Am. and Eng. Ency.) 1002. (2)    (a)    At common law surviving partners had a right to hold title to partnership assets and collect them and still have in Missouri subject only to be defeated by a statutory administration under chapter 2, article 3, Revised Statutes of Missouri 1909.   Meriwether v. Railroad, 128 Mo. App. 647; Easton v. Courtwright, 84 Mo. 27; Bredow v. Mutual Savings Inst., 28 Mo. 181; Holeman v. Nance, 84 Mo. 674; Hargadine v. Gibbons, 114 Mo. 561; Crook v. Tull, 111 Mo. 283; Matney v. Gregg, 19 Mo. App. 107; Goodson v. Goodson, 140 Mo. 206. · (b)    Statutory administration being in derogation of the common law rights of the surviving partner, the statute is strictly limited so as to interfere with a surviving partner as little as the words of the law fairly warrant. · Green v. Virden, 22 Mo. 506; Gregory v. Menefee, 83 Mo. 413. (3)    In order to collect any particular claim a statutory administrator of a co-partnership estate must show that the claim is the property of the co-partnership of which he is administrator and the fact that one is appointed administrator of a certain co-partnership is no evidence and raises no presumption that any particular property belongs to that partnership. Strode v. Gilpin, 187 Mo. 383. (4)    A public administrator has no power under the law to take charge of a co-partnership estate except by order of the probate court.   Sec. 302, R. S. 1909; Headlee v, Cloud, 51 Mo. 301. (5)    The death of a partner ordinarily dissolves a partnership but where provision is

made in the partnership articles (and perhaps where made in the will of the deceased partner) for the continuance of the partnership after such death, the partnership does not terminate with such death. Edwards v. Thomas, 66 Mo. 468; Farmers, etc., v. Garesche, 12 Mo. App. 584; Bank v. Tracy, 77 Mo. 594; Hax v. Burns, 98 Mo. App. 707; Browning v. Richardson, 186 Mo. 361. (6) While owing to considerations of sovereignty the United States courts will not issue process against the officer of a state court even in bankruptcy cases, yet when bankruptcy intervenes it is the duty of the state officers to give way to the United States court and the title vested in a trustee in bankruptcy over the assets of a decedent's bankrupt estate is superior to that of an administrator. In re Pierce, 102 Fed. 977; Scheiner v. Smith, etc., 112 Fed. 407.

*Henderson, Marshall & Becker* for respondent.

(1) An appeal will not lie from an order appointing or refusing to appoint an administrator. Flick v. Schenk, 212 Mo. 275; Looney v. Browning, 112 Mo. App. 195; State ex rel. v. Fowler, 108 Mo. 465. (2) That order of the probate court is not subject to attack or review, for it would be a collateral attack upon his appointment, and no such attack is allowable in law. In re Estate of Davison, 100 Mo. App. 263; Johnson v. Beazley, 65 Mo. 250; Griesel v. Jones, 123 Mo. App. 45. And this applies to a public administrator as fully as it does to any other kind of an administrator. Leeper v. Taylor, 111 Mo. 312; In re Hill's Estate, 102 Mo. App. 617; In re Estate, Judy, 166 Mo. 19. (3) In no view of the case are E. R. Hawkins & Company entitled to be the claimant, and Section 764, R. S. 1899, does not apply to proceedings in the Probate Court. Bredow v. Sav. Inst., 28 Mo. 181; Barnes v. Stanley, 95 Mo. App. 688; Goodson v. Goodson, 140 Mo. 206. (4) Harry Troll, public administrator, in charge of the partnership and

individual estates, is alone entitled to administer upon assets belonging thereto in Missouri. (a) The real situs of the asset in question is in Missouri, for the debtor resides here, and the assets must be administered upon here. McCarty v. Hall, 13 Mo. 480; In re Estate Henry Ames & Co., 52 Mo. 293; State ex rel. v. Moore, 18 Mo. App. 416; Leakey v. Maupin, 10 Mo. 373; Smith v. Denny, 37 Mo. 20. (b) The grant of letters testamentary in Pennsylvania had no effect beyond the territorial limits of that state, and it was necessary to have administration upon this asset in Missouri. Erolin v. Wylie, 10 H. L. Cas. 19; White v. Rose, 32 B. 507, 43 E. C. L. 482; Atty-Gen'l v. Hope, 2 Cl. & F. 84; Preston v. Melville, 8 Cl. & F. 1; Tourton v. Flower, 3 P. Wms. 371; Atkins v. Smith, 2 Atk. 63; Scott v. Bentley, 1 Kay & J. 281; Taylor v. Berham, 5 How. (U. S.) 233; Harper v. Butler, 2 Pet. (U. S.) 239; Trecotheck v. Austin, 4 Mason (U. S.) 16; Vaughan v. Northup, 15 Pet. (U. S.) 1; Brownson v. Wallace, 4 Blatch. (U. S.) 455; Mellus v. Thompson, 1 Cliff (U. S.) 125; Wood v. Gold, 4 McLean (U. S.) 577; Swatzel v. Arnold, 1 Woolw. (U. S.) 383; Pecquet v. Swan, 3 Mason (U. S.) 469; Bartlett v. Hyde, 3 Mo. 490; Craslin v. Baker, 8 Mo. 437; State to Use v. Porter, 9 Mo. 352; Leakey v. Maupin, 10 Mo. 368; Hastings v. Meyer, Admr., 21 Mo. 519; Naylor's Admr. v. Maffatt, 29 Mo. 126; Henenkamp's Admr. v. Bergonier, 32 Mo. 569; State to use v. Fulton, 35 Mo. 323; Smith v. Denny, 37 Mo. 20; Vastine v. Divan, 42 Mo. 269; State ex rel. v. Moore, 18 Mo. App. 406; Becraft v. Lewis, 41 Mo. App. 546; Boeger v. Langenberg, 42 Mo. App. 7; McPike v. McPike, 111 Mo. 216; Green v. Tittman, 124 Mo. 376; Crohn v. Bank, 137 Mo. App. 712. (c) The payment of this debt to the surviving partners, or to the foreign executor, or to their assigns, would be no defense to the suit of the Missouri administrator. Bartlett v. Hyde, 3 Mo. 490; Becraft v. Lewis, 41 Mo. App. 552; Green v. Tittman, 124 Mo. 376; Crohn v. Bank, 137 Mo. App. 712. (d) An attachment against a partnership is

dissolved by the death of one of the partners, and the appointment of an atministrator of the partnership estate, and the assets must be administered through the probate court. Barnes v. Stanley, 95 Mo. App. 688. (5) The pretended assignments to Raymond & Gordon, and by them to the United Mills Company, are void, so far as the assets in Missouri are concerned. Surviving partners cannot make a general assignment for the benefit of creditors. State ex rel. v. Withrow, 141 Mo. 69.

NORTONI, J.—This is a proceeding for the allowance and classification of a demand against the estate of L. R. Wilson, deceased. It originated in the probate court of the city of St. Louis on March 5, 1906, through plaintiff's exhibiting a judgment against Wilson's estate, which it had obtained against him during his lifetime. Because E. R. Hawkins, a member of the plaintiff partnership was dead, the probate court, on the motion of the public administrator of the city of St. Louis, substituted him as claimant in lieu of the co-partnership, as though such partnership was dissolved by the death of Hawkins and the public administrator had succeeded to its rights touching the judgment theretofore exhibited against the estate of Wilson. By this order or judgment, substituting the public administrator for plaintiff as claimant with respect to the demand evinced by the judgment in favor of E. R. Hawkins & Company, the probate court, of course, effectually denied the right to further proceed with respect to that matter and plaintiff prosecuted an appeal therefrom to the circuit court. The circuit court, after hearing the case, dismissed the appeal, on the theory the co-partnership of E. R. Hawkins & Company was neither a creditor nor interested party within the purview of the statute pertaining to appeals from the probate court, and from this judgment plaintiff prosecutes an appeal to this court.

From what has been said, it appears the question for decision relates to the right of plaintiff to prose-

cute the appeal from the probate court to the circuit
court. But the solution of this matter depends, in a
measure, upon the merits of the controversy between
plaintiff co-partnership and the public administrator as
to the right to prosecute the demand against the estate
of Wilson, for if the public administrator was without
authority to assume control of the partnership of E. R.
Hawkins & Company, then the demand against Wilson's
estate might be prosecuted by the co-partnership, under
our statute, in view of the fact that the suit was insti-
tuted on the judgment owned by it while such partner-
ship was a going concern.

The facts out of which the controversy arose are
somewhat complicated and to the end of a complete
understanding of the whole matter, together with the
principles of law invoked thereby, it will be essential to
state them *in extenso*.

Lemuel R. Wilson was a resident of the city of St.
Louis, where he departed this life, leaving an estate, of
which defendant Stephen Quinette was appointed the
administrator by the probate court of such city, and at
the time here involved Wilson's estate was in the course
of administration in that court. During his lifetime,
on March 10, 1896, the co-partnership of E. R. Hawkins
& Company recovered a judgment for $698.70 against
Wilson in the circuit court of the city of St. Louis, and
on March 5, 1906, such judgment was filed and exhibit-
ed by it as a demand against his estate in the probate
court. The co-partnership of E. R. Hawkins & Company
was a non-resident of this state, engaged in trading in
the woolen business at Philadelphia, Pennsylvania. E.
R. Hawinks having died at Philadelphia February 6,
1904, the public administrator of the city of St. Louis
assumed that the partnership, of which he was a mem-
ber, no longer continued and discovering this asset, the
judgment of $698.70 against Wilson exhibited in the
probate court as the property of such partnership, im-
mediately filed his notice under the statute and pro-

ceeded to take charge of the individual estate of E. R. Hawkins, deceased, on the theory that Hawkins had an interest in such judgment, and thereafter, on the same day, June 13, 1906, filed his notice and took charge of the partnership estate of E. R. Hawkins & Company, thereby asserting a right to administer upon such Missouri asset as the property of the co-partnership of E. R. Hawkins & Company, because of the death of Hawkins. The co-partnership of E. R. Hawkins & Company at the time it recovered the judgment against Wilson, March 10, 1896, consisted of Edward R. Hawkins and Thomas J. McEvoy and so continued until November 30, 1897, when Alden H. Weed was admitted as a partner therein, under a contract, by the terms of which the co-partnership consisting of Hawkins, McEvoy and Weed was to continue under the same name as before to November 30, 1903. At the time Weed was admitted into the partnership, all of the assets of the prior firm, including the judgment against Wilson, passed to and became the property of the new partnership, consisting of Hawkins, McEvoy and Weed, and on July 2, 1902, a new contract of partnership was entered into between these three parties, whereby the co-partnership was extended to November 30, 1906, and it was provided in such new contract of partnership that if E. R. Hawkins should die prior to the date to which the partnership was continued, November 30, 1906, the partnership should not be dissolved by his death but should continue for the period of time stipulated, and that the capital of Hawkins should remain in the firm until November 30, 1906, at which time the partnership would, of course, expire by virtue of the limitation prescribed in the contract. Prior to the death of Hawkins, he executed a will, which was afterwards duly probated, and directed therein that the partnership of E. R. Hawkins & Company should continue until November 30, 1906, as stipulated in the contract above referred to. Though Edwin R. Hawkins died February 6, 1904, it is entirely clear that the co-

partnership of which he was a member was not dissolved thereby, for though it be true that a mere direction in the will of one partner that the partnership shall continue after his death amounts to no more than the creation of a new partnership upon the taking effect of the will, on the theory that the surviving partners do not assent thereto until that time, as was decided in Exchange Bank v. Tracy, 77 Mo. 594, it is true as well that an existing partnership continues after the death of a member until the termination prescribed, if it is so stipulated in terms in the contract of partnership. So it is, though death ordinarily operates a dissolution of a partnership, it accomplishes naught with respect to that matter in cases such as this one, where, by an express stipulation in the articles of co-partnership, the partners have agreed the partnership shall continue. [Edwards v. Thomas, 66 Mo. 468; Farmers' & Traders' Savings, etc., v. Garesche, 12 Mo. App. 584; Hax v. Burnes, 98 Mo. App. 707, 73 S. W. 928.]

It therefore appears that notwithstanding the prior death of Hawkins, plaintiff partnership was a going concern at the time it exhibited the judgment for allowance against Wilson's estate March 5, 1906, and this being true, it is obvious the public administrator obtained no right whatever to administer upon the asset evinced by that judgment, for it was the property of the existing partnership of E. R. Hawkins & Company, who had succeeded thereto together with the other assets of the old firm. We believe the public administrator recognized this fact and acted accordingly, for it appears that he thereafter, on January 12, 1907, refiled his notice taking charge of the individual estate of E. R. Hawkins, deceased, under the will of Hawkins and asserted anew his authority as public administrator over the judgment as administrator of the partnership effects in Missouri of E. R. Hawkins & Company. The will of Hawkins having been exhibited in the probate court in the interim, it be-

came obvious to all concerned, through its reference to the partnership contract, that such partnership continued to exist even after his death. This conduct of the public administrator may be understood by a further recital of the facts pertaining to the then-existing partnership of E. R. Hawkins & Company and suggesting the theory upon which the public administrator moved the second time. Though the partnership of E. R. Hawkins & Company continued after the death of E. R. Hawkins and was in existence at the time the demand was filed, it appears that on July 5, 1906, it filed its voluntary petition in bankruptcy in the United States District Court in Pennsylvania and was duly adjudicated a bankrupt thereon a few days later. There can be no doubt that such adjudication operated the dissolution of the partnership of E. R. Hawkins, which otherwise would have continued to November 30th of that year, at the date of such adjudication. [George on Partnership, p. 403.] But upon such adjudication, the effects of that partnership came into *custodia legis* in the bankruptcy court in Pennsylvania and the identical asset, the judgment against Wilson involved here, was included, for it was scheduled as parcel of the bankrupt estate and thus rendered immune from administration in a state court though the partnership was dissolved by the bankruptcy. The prior assertion of authority by the public administrator of the city of St. Louis with respect to this asset is wholly without influence to the contrary, for, as above pointed out, no right existed in the public administrator touching that matter as the partnership was not dissolved by the death of Hawkins. All of the effects of Hawkins & Company so being in *custodia legis* in a court of competent jurisdiction of the United States, it is clear the Missouri asset, consisting of the judgment, was not then available for administration to the public administrator, at least until a reversion occurred, operating a reinvestment of title thereto in the estate of E. R. Hawkins, deceased, and the partners and such re-

version could only occur on a discharge in bankruptcy being effected with assets over which might vest *pro tanto* in the individual partners. It is upon such reversion the public administrator relies with respect to his right asserted as to the partnership estate. The theory advanced is that as he was in charge of the individual estate of E. R. Hawkins in Missouri at the time of the discharge in bankruptcy and such estate consisted in the individual interest of E. R. Hawkins' estate in such judgment, upon its reversion to the co-partners after the discharge, he may proceed as well under our statute, as administrator, on the estate of that co-partnership, for the reason the individual right is derived through the reversion of partnership effects. But it is obvious no right with respect to this asset ever vested in the estate of E. R. Hawkins, deceased, or the surviving partners after the adjudication in bankruptcy, so as to authorize its administration in Missouri, for by the very act of the discharge of E. R. Hawkins & Company, accomplished in bankruptcy, the title to all of the assets of the bankrupt was immediately transmitted to Raymond & Gordon.

It appears that in the autumn of 1906 a composition in bankruptcy as to the debts of E. R. Hawkins & Company was effected through the agency of McEvoy and Weed, surviving partners, acting for themselves and the partnership, with power of attorney from the executors of the estate of E. R. Hawkins, deceased, and the beneficiaries under the will of Hawkins, through an arrangement effected by them in writing for all interests in the bankrupt partnership. It was agreed that Raymond & Gordon would furnish the money to compensate the composition of the partnership debts at 66 2-3 cents on the dollar and in consideration therefor take over by assignment all of the property and effects of E. R. Hawkins & Company, together with the right to use the partnership name for a period not exceeding five years. Raymond & Gordon advanced the money in accordance with

this arrangement, and the partnership debts were discharged through the composition, which was subsequently confirmed by the bankruptcy court on October 2, 1906, and the judgment against Wilson, together with all other assets of E. R. Hawkins & Company, were assigned to Raymond & Gordon. This assignment to Raymond & Gordon, occurring as it did as parcel of the arrangement in composition, operated of course to vest title to the assets in Raymond & Gordon immediately upon the confirmation of the composition, for though, in the science of the law, the title *pro tanto* to the judgment and other effects vested in the individual estate of Hawkins and other individual members of the bankrupt firm, upon the confirmation of the composition and the resultant discharge of the partnership, it did so, subject to the assignment theretofore stipulated for and operated instanter upon the taking effect of the confirmation and consequent discharge of the bankrupt. It is therefore entirely clear that there was no reversion of interest, upon the discharge of the bankrupt, to the individual members of the prior firm of E. R. Hawkins & Company or the individual estate of Hawkins upon which an administration might attach as to any of the prior assets of that firm.

But it is argued the bankruptcy proceeding is without influence in the case and wholly insufficient, together with the assignment above mentioned, to transmit the right of the individual estate of Hawkins to Raymond & Gordon, for the reason Hawkins' estate was not mentioned in the petition for a voluntary bankruptcy. It is true the surviving partners only, McEvoy and Weed, signed and presented that petition, but they did so, according to the uncontradicted proof, with the understanding of all, that Hawkins' estate was a party thereto. At any rate, under the partnership contract, the firm entity continued after the death of Hawkins, though his estate was interested therein to the identical extent as was Hawkins in his lifetime, and the surviving partners con-

stituted the active entity of the continued partnership. In such circumstances, it was competent for the surviving partners alone, without being joined by the executors of the deceased partner, to instigate a voluntary proceeding and procure an adjudication in bankruptcy which would conclude the whole matter, if those representing the estate of the deceased partner did no more than acquiesce therein. [In re Coe, 157 Fed. Rep. 308.] The record discloses it was agreed by everybody concerned that Hawkins' estate was a party to the bankruptcy proceedings and that his executors consented thereto. Indeed, this matter is not controverted. Putting aside entirely the authority of the surviving partners, where the partnership is continued by the contract as above suggested, it is the rule of decision, when all of the partners are living, that if a portion of the members of the firm voluntarily file a petition in bankruptcy, the adjudication will be regarded as a voluntary one with respect to all, if it appears their assent is given. [In re Murray, 96 Fed. Rep. 600.] There can be no doubt that the bankruptcy proceeding was a voluntary one as to all interests in the co-partnership of E. R. Hawkins & Company and that the interests of the Hawkins' individual estate are concluded thereby, identically as are those of the two surviving partners who moved in the matter with the consent of the executors. The argument that no consideration passed to the Hawkins' estate for the assignment of the judgment and other effects to Raymond & Gordon is without merit, in view of the conclusive effect of the adjudication in bankruptcy, for that estate received and accepted the benefits of the bankruptcy proceeding. The discharge of the bankrupt co-partnership through the confirmation of the composition of its debts at 66 2-3 cents on the dollar operated the removal of a considerable burden from the co-partnership, in which the individual estate of Hawkins was interested.

From what has been said, it is obvious that at no time was the asset involved here a subject of administra-

tion in Missouri, for it was the property of a continuing going partnership until the adjudication of bankruptcy and thereafter in *custodia legis* in the bankrupt court until the instant of its assignment on the confirmation of the composition and consequent discharge of the bankrupt to Raymond & Gordon who subsequently assigned it to the United Mills Company. In this view, the public administrator was without any right whatever in the premises.

But it is argued that though the administrator had no right, the appeal should be dismissed for the reason the co-partnership of E. R. Hawkins & Company, consisting of his individual estate and the surviving members of that firm, were not competent to prosecute an appeal from the probate court under our statute. On this question, it should be said that by its order and judgment substituting the public administrator for plaintiff with respect to the demand against Wilson's estate the court effectually denied the right of the claimant to either prosecute or recover on its demand. Such was a final decision as to that matter. Hanley v. Holton, 120 Mo. App. 393, 96 S. W. 691. At the time the demand was originally filed, on March 5, 1906, plaintiff was an existing going partnership and as such prima facie a creditor of Wilson's estate, for it owned the judgment asset. Our statute authorizing appeals from the probate court to the circuit court, section 289, Revised Statutes 1909, authorizes an appeal on all demands against an estate exceeding ten dollars and by the concluding lines of the section it is provided the right of appeal shall extend to any creditor or other person having an interest in the estate under administration. It is argued that though E. R. Hawkins & Company was a creditor of the Wilson estate at the time the demand was filed, on March 5, 1906, it no longer occupied that status at the time the appeal was granted, for the reason that, through the subsequent bankruptcy and the assignment of this judgment to Raymond & Gordon and their assignment

to the United Mills Company, the interest of appellant as a creditor or otherwise was fully divested. If this were the only statutory provision to be reckoned with, the argument would be persuasive indeed, but another provision touching situations of this character intervenes to continue the right and an artificial status of creditor throughout. Section 1924, Revised Statutes 1909 provides as follows:

"When an interest is transferred in any action now pending, or hereafter to be brought, other than that occasioned by death, marriage or other disability of a party, the action shall be continued in the name of the original party, if the party to whom the transfer is made will indemnify the party in whose name the suit is to be continued against all costs and damages that may be occasioned thereby, or the court may allow the person to whom the transfer is made to be substituted in the action; and in all such cases, the party to whom the transfer is made shall be required by the court, upon application of the party who made the transfer, either to give such indemnity or to cause himself to be substituted in the action, and upon his omission to do so, the court shall order the suit to be dismissed."

From this, it appears as no move was made to substitute the real owner of the judgment as claimant or plaintiff, the proceeding was properly continued in the name of the original party at least until the transferee had declined to give the indemnity contemplated by the statute, and this was a right which plaintiffs might waive, if they chose so to do, as they did. It does not appear that Raymond & Gordon or the United Mills Company either sought to be substituted as plaintiff or were required to give the indemnity and refused to do so, but the matter proceeded in the name of the original claimants. It is insisted the statute quoted is without influence as to proceedings in the probate court and applies solely to actions in the circuit court, for it is said to be parcel of the code of civil procedure. We are not

so persuaded. Indeed, the Supreme Court in McFaul v. Haley, 166 Mo. 56, 65 S. W. 995, expressly decided that it applied to a case where a judgment had been filed in the probate court in the name of Berrein and subsequently assigned to McFaul before its allowance, even though it were afterwards allowed and classified by the probate court in the name of Berrein, who had originally filed it but subsequently assigned to McFaul. The court approved the proceeding and said the statute was designed with the express purpose to cover such situations. In that case, the allowance of the demand in the probate court was made in the name of Berrein who had originally filed it as though his status of creditor continued even after he had actually parted with all interest by assignment to McFaul, who was finally substituted as plaintiff in the circuit court. The principle of that case is directly in point and conclusive here. We, therefore, conclude that in the circumstances of the case plaintiffs' original status as creditor of Wilson's estate continued in the eye of the law, by the terms of the statute and it was competent for them to prosecute the appeal notwithstanding the assignment of the demand.

The judgment should be reversed and the cause remanded with directions to the circuit court to remand the same to the probate court for such further proceedings as are competent and proper, not inconsistent with the views expressed in this opinion. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.