**Wallace STUART, M. D., Plaintiff-Respondent,**

**v.**

**OVERLAND MEDICAL CENTER, a partnership, et al., Defendants-Appellants.**

**No. 35364.**

Missouri Court of Appeals,
St. Louis District,
Division One.

May 21, 1974.

Motion for Rehearing or Transfer Denied
June 12, 1974.

J. E. Sigoloff, Sidney Rubin, St. Louis, for defendants-appellants.

Harold B. Bamburg, St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendants, physicians practicing at the Overland Medical Center, appeal from a judgment entered in favor of plaintiff, a physician specializing in dermatology who formerly had practiced at the Center. The judgment ordered that plaintiff recover against defendants the sum of $37,096.74 together with the costs of the action. In reaching its judgment, the court concluded that plaintiff practiced medicine in a partnership with defendants at the Overland Medical Center, and that the partnership between plaintiff and defendants was dissolved by plaintiff on May 19, 1971. The court's judgment represented the value, as ascertained by the court, of plaintiff's in-

terest in the partnership together with plaintiff's outstanding accounts receivable less ten percent for collection. From the sum of $58,550.00 thus determined, the court has deducted certain amounts due defendants, leaving the balance set out in the judgment.

Defendants urge four points of error on appeal. The first point challenges the court's conclusion that the relationship between plaintiff and defendants was one of partnership. The three remaining points attack the court's valuation of plaintiff's partnership interest and plaintiff's accounts receivable. We affirm.

Plaintiff, Dr. Wallace Stuart, began practicing dermatology at the Overland Medical Center in 1963. Not long after he had begun this practice, plaintiff was approached by one of the defendants, Dr. Mitchell Yanow, the medical administrator, about the possibility of his purchasing the department of dermatology at the Center. The formulas used to determine the consideration for which Dr. Stuart could purchase a four percent interest consisted of ten percent of his gross receipts for a five year period at the beginning of his practice at the Center plus eight percent of his outstanding accounts receivable at the end of that five year period, none of which were to be over one year old. Plaintiff accepted the offer and began making payments under this formula, and after five years of practice, the total amount was computed to be $17,182.30. Of this sum, $11,297.04 was paid by Dr. Stuart, leaving an unpaid balance of $5,885.26 at the time of the trial.

After working at the Center for a period of eight years (1963 to 1971), Dr. Stuart decided to terminate his association with the Center. He communicated this intention to Dr. Yanow through a letter written by his attorney which was dated May 19, 1971. Dr. Stuart's severance was to be effective on July 31, 1971. Prior to July 31, 1971, Dr. Stuart sent notices to the patients he had been treating at the Center informing them that he was leaving the Center and opening an office elsewhere. Defendants also sent notices to patients informing them that another dermatologist would be available to treat them at the Center beginning August 1, 1971.

By this testimony Dr. Stuart established that the formula used to establish the purchase price had also been agreed to be used to establish value of his interest to be paid if he withdrew from the partnership. And so when Dr. Stuart left the Center, the amount due him under the formula for five years prior to July 31, 1971, was $30,350.00 and $28,200.00 for his outstanding accounts receivable, or a total amount of $58,550.00. Dr. Stuart admitted that when he left the Center he took some equipment with him which was worth $500.00. In addition, he had been paid $15,068.00 on his accounts receivable at the time of trial.

Because he was unable to effect an agreeable settlement of the amount of money to which he felt he was entitled, Dr. Stuart instituted this present action seeking the aid of the court in settling the matters in dispute. After hearing plaintiff's and defendants' evidence, the court concluded that plaintiff was entitled to a court-imposed settlement of accounts by virtue of § 358.420, RSMo 1969. It made the following calculations in determining the amount which plaintiff was entitled to receive from defendants:

| GROSS AMOUNT DUE: | | |
|---|---|---|
| Value of partnership interest | $30,350.00 | |
| Value of accounts receivable | 28,200.00 | |
| | | $58,550.00 |
| LESS: | | |
| Unpaid balance of purchase price for partnership interest | $ 5,885.26 | |
| Payment made from collection of accounts receivable | 15,068.00 | |
| Equipment removed from Center | 500.00 | |
| | | $21,453.26 |
| | | $37,096.74 |

The court then entered judgment against defendants and in favor of plaintiff for the sum of $37,096.74 plus costs.

Defendants first contend that plaintiff was not entitled to have the value of his interest in the Overland Medical Center determined by the trial court under § 358.-420, RSMo 1969, V.A.M.S., because the evidence was insufficient to show that a partnership existed between plaintiff and defendants. In support of this contention defendants argue that the evidence showed a relationship between plaintiff and defendants as one of expense-sharing rather than one of partnership, especially since the evidence failed to show that any doctor shared the profits of any other doctor.

■ Under the Uniform Partnership Law which was adopted in this state in 1949, a partnership is defined as "an association of two or more persons to carrry on as co-owners a business for profit." § 358.060(1), RSMo 1969, V.A.M.S. A partnership is defined judicially as "a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business and to divide the profits and bear the loss in certain proportions." Allison v. Dilsaver, 387 S.W.2d 206, 210 [1] (Mo.App.1965). The contract creating the partnership need not be written, but may be expressed orally or implied from the acts and conduct of the parties. Stein v. Jung, 492 S.W.2d 139, 143 [5] (Mo.App. 1973). The primary consideration in determining the existence of a partnership is whether the parties intended to carry on as co-owners a business for profit. Stein v. Jung, *supra* at 144 [6]. With this general background in mind, we proceed to the facts in this case.

Before plaintiff left the Overland Medical Center, he had paid $11,297.04 toward purchasing a four percent interest in the Center. The 1970 financial statement of the Center lists plaintiff's equity in the Center at four percent. Dr. Mitchell Yanow, one of the founders and for some time medical administrator of the Center, testified plaintiff engaged to purchase a four percent interest in the Center and described it as a partnership. Thus, along with the other doctors who had an equity in the Center, plaintiff was a co-owner.

The amount of money each doctor received for practicing his profession at the Center was based upon the billing for services performed by each doctor and collected by and in the name of the Center less a percent of the expenses. By way of illustration, if one doctor collected $1,000.00, and the amount collected by all the doctors was $10,000.00, the doctor who collected $1,000.00 would receive $1,000.00 less 10% of the expenses since the $1,000.00 was ten percent of the total amount collected by all the doctors. The amount of expenses to which each doctor's income was subject was determined by the same method used to allocate collections. Again by way of illustration, if the expenses of all the doctors totaled $2,000.00 for the year in which they collected $10,000.00, the doctor who collected $1,000.00 would be liable for ten percent of the expenses or $200.00. Thus, at the end of this hypothetical year, the doctor who collected the $1,000.00 would receive $800.00 as income. Defendants argue that since this method of allocating income is not a profit sharing arrangement but rather an expense sharing arrangement, the relationship between the doctors at the Center cannot be denominated a partnership. We find this argument unconvincing. Each doctor received compensation for the services he performed at the Center. The amount each doctor received as compensation may properly be called income or profit as the two terms are often used interchangeably and, for the most part, have the same meaning. Selleck v. Hawley, 331 Mo. 1038, 56 S.W.2d 387, 394 (1932). Each doctor shared to some extent in the income or profit of the other doctors although the sharing was not the result of proportionally dividing the total amount of money collected by all the doctors without considering the amount of money each doctor collected individually. Rather, the profit sharing was accomplished by the Center's method of allocat-

ing the expenses to be deducted from each doctor's collections. For example, if the doctor referred to in our illustration above had actual expenses of $100.00, $100.00 of the $200.00 he had to pay as expenses was used to pay or help pay another doctor's expenses. It was in this manner that the doctors in the Center actually shared profits. Because the expenses each doctor had to pay bore no relationship to the actual expenses of each doctor, some doctors were receiving profits that otherwise might have been distributed to the doctor or doctors whose actual expenses were slight when compared to the actual expenses of other doctors.

▇▇▇ Thus the evidence proved that plaintiff was practicing his profession with the other doctors in the Center as a co-owner of the Center's facilities for a profit. While co-ownership and the sharing of profits by those engaged in business are not factors which conclusively establish the parties' relationship as that of partnership, they are prima facie evidence of partnership. § 358.070(4), RSMo 1969, V.A.M.S. As such, the presumption of partnership prevails unless evidence sufficient to rebut the presumption is brought forward. In this case, defendants presented no evidence which would lead to the conclusion that the relationship between plaintiff and them was anything other than a partnership. Indeed, defendants' evidence actually aids the conclusion that the relationship was a partnership. By 1970 plaintiff was listed in a financial statement of the Overland Medical Center for the years 1969 through 1971, one of defendants' exhibits, as a partner with an equity interest in the Center of four percent. Another defendants' exhibit entitled a "Partnership Agreement" was entered into on January 1, 1954, by the three physicians who started the Overland Medical Center. While plaintiff never signed this agreement, the agreement was evidence that the physicians who founded the Center intended to and actually did practice medicine as partners in a partnership from its inception.

Under these facts and circumstances, combined with the defendants' failure to prove that no partnership relation was intended, the trial court did not err in concluding that the professional arrangement between plaintiff and defendants was a partnership.

Defendants' next two points challenge the trial court's determination that the value of plaintiff's interest in the partnership was $30,350.00. They argue that the appraisement of this interest could have been based only upon speculation as there was no evidence in the record upon which the court could have made an intelligent appraisement of the interest. They also argue that because there was an absence of evidence upon which an accurate valuation of the interest could be made, the court's appraisement of the interest's value erroneously included a figure for good will since the good will was appropriated by plaintiff when he left the Center and began his own practice.

▇▇▇ Section 358.420, RSMo 1969, V.A.M.S., sets forth the right of a retiring partner when the partnership business continues. That section provides that when the retired partner and the partnership had been unable to settle accounts between them, the retired partner may have the value of his interest at the date of dissolution ascertained unless otherwise agreed. The statute implies that determination of the retiring partner's interest may be the subject of agreement. This has always been so. Partnerships rest on contract and the rights and liabilities of the partners between themselves, though fixed by law, are subject to the agreement of the parties as far as their agreement and intention can be ascertained. Allison v. Dilsaver, *supra*, 387 S.W.2d 206, 211 [4, 5] (Mo.App.1965). A provision in an agreement at the inception of the partnership with regard to the determination of a withdrawing partner's interest is a customary clause. Since partnerships are finite, the subject of ascertaining partnership interest at dissolution is of great concern to the contracting par-

ties. And so here, it became a matter of discussion and according to the judgment of the court, a matter of agreement when plaintiff entered the partnership.

■ Our review of the record in this case convinces us that the trial court had before it sufficient evidence from which to conclude that plaintiff's partnership interest in the Center could be determined, in accordance with the agreement of the partners. Plaintiff testified that defendants, through Dr. Yanow, orally agreed that he, plaintiff, was entitled to be bought out on the same basis that he bought in with the exception that the period for determination would be the five years immediately prior to his departure from the Center rather than the five years following his admission. Although defendant Yanow denied that this was agreed upon, there is evidence in the record other than plaintiff's own testimony supporting plaintiff's version of the agreement. Defendants admit that the purchase price of the four percent interest in the partnership was based upon a similar percentage of earnings formula without regard to the actual value of the assets and liabilities of the Center. Moreover, the Partnership Agreement entered into by the three physicians who founded the Center provided a similar manner and method by which a partnership interest in the Center could be sold. It provided that the purchase price to be paid for the interest of the selling partner "shall be twelve (12%) percent of the gross fees received from the services rendered by said department for a period of five (5) years from the date of said purchase plus eight (8%) percent of fees remaining uncollected at the end of said five (5) year period." Although different in the percentum used, the above quoted provision is remarkably similar to the one plaintiff contends was orally agreed upon in that it too is based upon a percentage of earning formula without regard to the actual value of the assets and liabilities of the Center. These circumstances indicate to us that there was an actual contract between the parties which provided the method for determining the value of any partner's interest in the Center at the date of dissolution. In plaintiff's case, there was substantial evidence that the method for determining the value of his interest was an amount equal to ten percent of his gross fees for the five years prior to dissolution plus eight percent of the face amount of his accounts receivable.

■ Defendants' argument that the court's appraisement of the plaintiff's partnership interest erroneously included a figure for good will is not supported by the record. In its findings of fact and conclusions of law, the court never mentions that its valuation of plaintiff's partnership interest includes a figure for good will. This being the case, we cannot consider this argument in our review as we are limited to the plain and literal meaning of the court's judgment entry appearing in the transcript. Depoy v. Haught, 373 S.W.2d 161 [1] (Mo.App.1963).

■ As their final point of error defendants assert that the court's judgment concerning the amount due plaintiff on his accounts receivable was excessive. Defendants argue that the accounts receivable were subject to a charge for expenses which were not considered by the trial court in its determination. Defendants refer us to no authority in support of their claim. Rather, they rely on the testimony provided by their accountant as their sole support. He described the system as one where each doctor billed for his services through the Center and the Center paid these expenses out of cash received before the net was distributed to the doctors. Here plaintiff had already paid for his share of the expenses down through July 31, 1971, the date of effective dissolution. The money collected thereafter should not be charged with expenses which had no relationship to the production of his accounts receivable. The allowance of ten percent

for collection to defendants was reasonable as supported by the evidence.

The judgment is affirmed.

SIMEONE, Acting C. J., and KELLY, J., concur.