Charles A. RICH, Respondent,

v.

Nathan CLASS & Alice Class Ludmer, Appellants.

No. 42776.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 14, 1982.

Jay Levitch, Randall A. Martin, St. Louis, for appellants.

Geo. W. Lange, Jr., St. Louis, for respondent.

SMITH, Judge.

Nathan Class and Alice Class Ludmer appeal from the order of the trial court overruling their objections to the final settlement of Charles A. Rich, executor of the estate of Sylvera Rich Class, deceased. Nathan Class is the widower of decedent; Alice Class Ludmer is the decedent's daughter. Nathan Class elected to take against decedent's will; Alice Class Ludmer is the main ultimate beneficiary of the residuary estate. Their objections to the final settlement relate to a sale by the estate of dece-

dent's partnership interest in Shandel Investment Company (or sometimes Shandel Investment Enterprises or Shandel) to the co-executors of the estate [1] and the sale by the estate of five life insurance policies owned by decedent on the life of Sam Rich to a sister of the co-executors. Some factual development is necessary for an understanding of the issues on appeal.

In 1951 Sam Rich, Hilda Rich and Sylvera Rich Class executed a partnership agreement forming the partnership known as Shandel Investment Enterprises. The partners were siblings. The profits and losses from the partnership were to be divided 60% to Sam and 20% to each sister. The agreement provided that no partner could assign his interest in the partnership without the consent in writing of the other partners. The agreement contained a provision that:

"XI

Upon the dissolution of said partnership by reason of the death of any of the parties, the partnership shall thereupon terminate as to him or her, and he or she, his or her heirs, personal representatives or assigns, as the case may be, shall have no interest in common with the surviving partners in the property of the partnership, but shall be considered in equity as a vendor to the surviving partners of his or her share in the partnership as from the date of his or her death. No amount shall be set up for good will in determining the said book value.

The net worth of the partnership interest of the deceased partner shall be considered a debt owing from the partnership to the deceased partner, or his or her heirs, or personal representatives, and shall be paid in the following manner:

Fifty (50%) per cent in cash within sixty (60) days from the date of death, an additional twenty-five (25%) per cent within six (6) months, and the balance of twenty-five (25%) percent within one (1) year from the date of death of the deceased partner, with interest on the deferred payments at the rate of three (3%) per cent per annum. The surviving partners shall have the right to pay all or part of the unpaid balance at any time prior to maturity.

Upon the death of any of the partners as aforesaid, the surviving partners shall have full power and authority to do all things which they deem necessary or desirable in connection with the operation of the business including the collection of all amounts due the partnership and shall not be required to probate the partnership estate, and failure to probate the partnership estate shall not give the heirs or personal representatives of deceased partner the right to administer the partnership estate."

Hilda Rich died in 1954. Charles Rich and Mamie Rich, additional siblings, were appointed co-executors of Hilda's estate. The partnership interest of Hilda was not purchased by the surviving partners. Instead contrary to paragraph XI of the partnership agreement, the co-executors requested distribution of the partnership interest to themselves as the residuary beneficiaries of Hilda's estate. Distribution of that interest was made to Charles and Mamie—one-half to each. Thereafter Sam, Sylvera, Charles and Mamie continued to operate the business. No new partnership agreement was executed nor was the original agreement signed by Charles and Mamie. In 1966 Sylvera died. Sam and Charles were appointed co-executors of her estate. Their inventory listed Sylvera's 20% interest in the Shandel partnership as an estate asset.

In 1969 Sam and Charles, as co-executors of Sylvera's estate, sought authority from the probate court to sell the partnership interest in Shandel to the "surviving partners" pursuant to the partnership agreement of 1951. An administrator ad litem was appointed by the court and following

---

**1.** One of these co-executors, Sam Rich, died in 1972, after the sale. Plaintiffs contend, in addition to those matters discussed herein, that the sale was void under Sec. 473.477, RSMo 1978. We do not reach that issue.

his investigation recommended that the partnership interest be sold to Sam, Charles and Mamie for $102,911.35. This figure was based upon the balance sheet prepared by the Shandel accountant of the assets and liabilities of the firm, purportedly the "book value" of Shandel. That document (along with certain other exhibits) has not been included as a part of the record on appeal.[2] The amount paid included 3% interest commencing a year after Sylvera's death. The plaintiffs here were not given notice of the petition seeking sale nor were they consulted by the administrator ad litem during his investigation. The probate court then entered its order authorizing sale of the partnership interest to Sam and Charles for the amount recommended by the administrator ad litem.[3] No notice of this order was given to plaintiffs, nor does the testimony concerning the probate file reflect that any hearing on the petition was held.

In 1968 the co-executors filed a petition to sell five life insurance policies owned by testatrix on the life of Sam. The estate had paid premiums on four of these policies (the fifth was paid-up) and these premium payments were disallowed on the basis that such policies were not a proper investment for an estate. The co-executors sought to sell these policies to Mamie for (1) the cash value at the date of testatrix' death plus premiums paid by the estate or (2) the cash value at date of sale, whichever was greater. This petition was approved. Upon Sam's death in 1972, the face amount of the policies exceeded the amount paid for them by Mamie by approximately $8,000.

Following Sam's death in 1972, Charles continued as executor of Sylvera's estate. In 1975 he filed his final settlement and proposed decree of distribution. Plaintiffs filed their objections thereto challenging, among other items, the sale of the Shandel partnership interest and the sale of the insurance policies. The probate court,[4] after hearing, sustained the objections to the partnership interest sale and overruled the objections to the sale of the insurance policies. The order provided for a further hearing to determine the value of the partnership interest in accordance with Sec. 358.420, RSMo 1978. Both parties appealed to the circuit court which affirmed the probate court findings on the insurance policies and reversed the probate court on the partnership interest in Shandel. This appeal followed.

The thrust of plaintiffs' contention concerning the interest in Shandel is that the death of Hilda Rich in 1954 caused the dissolution of the partnership and the termination of the partnership agreement; that although the business of the partnership was continued the partners never reexecuted or reaffirmed the original partnership agreement; that therefore no right of acquisition of Sylvera's interest existed because of that agreement. From this, plaintiffs contend, the estate's interest in the partnership must be determined by the provisions of Sec. 358.420, RSMo 1978, which was in effect at the time of Sylvera's death. We agree with plaintiffs' contention.

The Uniform Partnership Act, in force in this state, provides that dissolution of a partnership occurs upon the death of a partner. Sec. 358.310. That is also the common law. *Spaunhorst v. Link,* 46 Mo. 197 (1870); *Roberts v. Hendrickson,* 75 Mo. App. 484, 490 (1898). Such death also terminates the partnership agreement. *McGill v. Brown,* 215 Mo.App. 402, 256 S.W. 510 (1923)[2–4]. Because a partnership is the product of contract, it is possible for the agreement to provide for continuation of the partnership pursuant to the agreement

2. In its findings on the plaintiffs' objections to the final settlement, the probate court noted that some assets were "depreciated greatly in arriving at book value" in the balance sheet.

3. Although the court's authorization listed only Sam and Charles as purchasers, the estate received one-third each of the ordered price from Sam, from Charles and from Mamie.

4. At the time of the proceedings below the probate court was a separate judicial entity. It is now a division of the circuit court. Mo. Const. Art. V, § 27.2.b (1979); Sec. 472.010(6), RSMo Supp. 1982.

after occurrence of a condition which would normally dissolve the original partnership. *Hidden v. Edwards,* 313 Mo. 642, 285 S.W. 462 (1926) [10]; *Stuart v. Overland Medical Center,* 510 S.W.2d 494 (Mo.App.1974) [6, 7]; *E.R. Hawkins & Co. v. Quinette,* 156 Mo. App. 153, 136 S.W. 246 (1911) [1, 2]; *Johnson v. Hill,* 1 Ariz.App. 290, 402 P.2d 225 (1965) [1]. The 1951 partnership agreement contains no such provision. In fact, it specifically provides that dissolution of the partnership occurs by reason of the death of a partner and gives the surviving partners authority to do those things necessary to the *operation of the business.* Under the 1951 agreement and also under the Uniform Partnership Act the death of Hilda in 1954 dissolved the partnership and terminated the agreement.

■■■ The trial court found, however, that after the death of Hilda, "Sam Rich, Charles A. Rich, Mamie Rich and the decedent by agreement continued the Shandel partnership with Charles A. Rich and Mamie Rich being admitted as partners in place of Hilda Rich, and agreed that the Partnership Agreement should remain in full force and effect and binding upon them." There is no question that the remaining and newly admitted parties may by oral agreement readopt the partnership agreement in existence prior to the dissolution. *Johnson v. Hill, supra; Spaunhorst v. Link, supra; Stuart v. Overland, supra.* The difficulty here is that the record is devoid of any evidence they did so. None of the members of the partnership after Hilda's death executed a new agreement. Charles and Mamie never signed the 1951 agreement. There was no testimony that the members of the new partnership orally adopted the 1951 agreement nor is there any documentary evidence to show such adoption. Charles Rich testified, and his testimony is notable by the absence of any statement of readoption or agreement to the terms of the 1951 agreement. The most the evidence establishes is that the business of the partnership was continued, that a new partnership was formed, and that the relative interests of Sam, Sylvera, and the devisees of Hilda remained the same. That does not establish that the 1951 agreement was readopted.

Further the conduct of the parties belies their continuation of the original agreement. Upon Hilda's death, and despite the express language of paragraph XI of the agreement that Hilda's heirs, personal representatives or assigns would have no interest in the property of the partnership and their interest would be a debt which *"shall be paid"* in a prescribed manner, no buyout of Hilda's interest was made. Instead the devisees under Hilda's will were brought into the partnership and given her interest. This clearly reveals that the four partners in the new partnership were not acting pursuant to the 1951 agreement. Furthermore, upon Sylvera's death, the time constraints of the 1951 agreement for payment of the debt of the partnership to Sylvera's estate were completely ignored. No effort was even made to acquire Sylvera's interest in the partnership until three years after her death and the interest was computed from one year after her death not sixty days after. This is convincing evidence that the new Shandel partnership in effect on the death of Sylvera was not based upon the 1951 agreement. *Johnson v. Hill, supra,* relied upon by both the trial court and the executor, makes it clear that there must be evidence of intention to adopt the old articles of partnership in order to find that that agreement determines the rights and duties under the new partnership. *See also, Spaunhorst v. Link, supra.* Being fully cognizant of the scope of our review under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), we find no evidence of such intention.

■■■ The trial court also found that plaintiffs were guilty of laches and so not entitled to relief. Invocation of laches requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other

party suffers legal detriment therefrom. *McDaniel v. Frisco Employees' Hospital Ass'n.,* 510 S.W.2d 752 (Mo.App.1974) [3–5]; *Dye v. Bowling,* 82 Mo.App. 587 (1900). We find none of those elements here. The record is clear that the plaintiffs had no notice of the co-executors petition to sell the partnership interest and no notice of the probate court order authorizing such sale. They were, therefore, in no position to challenge that petition. The trial court found that plaintiffs had knowledge of subsequent annual settlements which showed no interest of the estate in Shandel, that plaintiffs filed petitions after the granting of the Shandel sale petition to set aside certain other sales, that they participated in a family allowance hearing in probate court "in which evidence was presented concerning their needs in relation to the financial condition of the Decedent's estate." From this, the trial court made a fact finding that the "Movants and their attorneys who have represented them during the entire administration of the estate had constructive and actual notice of both sales [including the insurance sale] shortly after the Probate Court entered its orders described above." We find nothing in the record to support a conclusion that plaintiffs or their attorneys had actual notice of the Shandel sale. It is equally problematical to conclude that they had constructive knowledge as that term carries a connotation that the material was available and that plaintiffs had an obligation to seek it out. We are aware of no such obligation by heirs and devisees during the pendency of an estate.

■ The Probate Code provides that plaintiffs as heirs and devisees may challenge the actions of the executors and their accounts and settlements at the time of the filing of the final settlement. Sec. 473.590, RSMo 1978. The code further provides that notice of the final settlement and petition for distribution must be given to the heirs and devisees. Sec. 473.587, RSMo 1978. The obvious purpose of these sections is to allow whatever challenge the heirs and dev-

isees may have to the administration of the estate, to the conduct of the executors and to the orders of the probate court to be made at the time of final settlement. There is no requirement that they receive notice of other settlements or of most other proceedings involving administration of the estate. Until approval of the final settlement, the orders of the probate court are interlocutory and subject to review by that court. *In re Estate Bacheller,* 437 S.W.2d 132 (Mo.App.1968) [3, 4]; *State ex rel. Estate of Seiser v. Lasky,* 565 S.W.2d 792 (Mo.App.1978). Nor do we believe the last sentence of Sec. 472.150, RSMo 1978 can be construed to protect an executor from the consequences of an invalid order sought by him. *In re Estate of Bacheller, supra,* [3, 4]. Plaintiffs filed their objections to the executor's final settlement as provided in the Probate Code and we are unable to conclude that such filing represented an improper or unwarranted delay. *State ex rel. Jones v. Jones,* 53 Mo.App. 207, 222 (1893).

■ In addition, the only finding of the trial court of prejudice was that the surviving partners had paid the money called for by the order approving the petition for sale. That payment occurred immediately after the order. Such payment does not rise to the level of prejudice required for the invocation of laches. The prejudice which supports laches is generally of two kinds, i.e.: (1) loss of evidence which would support defendant's position and (2) change of position in a way that would not have occurred but for the delay. *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800 (8th Cir.1979) cert. denied, 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267; *Stephenson v. Stephenson,* 351 Mo. 8, 171 S.W.2d 565 (1943) [8–10]. Neither is demonstrated here. Under Sec. 358.420 plaintiffs are entitled to have the court determine the value of Sylvera's interest at her death plus interest or profits. Such relief does not involve any change of position by defendant. We find the trial court erred in reversing the

order of the probate court sustaining the plaintiffs' objection to the Shandel partnership transaction.

 We turn to the insurance policies. We find no error in the ruling of the trial court and probate court thereon. The policies here were owned by decedent. During her life she had an insurable interest in the life of Sam because of their business relationship. *Poland v. Fisher's Estate,* 329 S.W.2d 768 (Mo.1959) [4–6]; *Alexander v. Griffith Brokerage Co.,* 228 Mo. App. 773, 73 S.W.2d 418 (1934) [1–3]. Upon Sylvera's death the business relationship terminated as we have heretofore held. It might be argued that the estate had an insurable interest in Sam as a creditor of Sam because of the partnership obligation to pay the estate the value of Sylvera's interest in the partnership pursuant to Sec. 358.420. But the probate court determined that the payment of insurance premiums was not a proper investment for the estate and we cannot conclude the court was incorrect in that determination. That conclusion having been reached, the market for sale of the policies was limited to those persons having an insurable interest in Sam's life, which did not include either of the plaintiffs. *Williams v. People's Life & Acc. Ins. Co.,* 224 Mo.App. 1229, 35 S.W.2d 922 (1931) [1, 2]; *Field v. John Hancock Mut. Life Ins. Co. of Boston, Mass.,* 142 S.W.2d 816 (Mo.App.1940) [4]. The sale was effectuated to one of Sam's partners who had such an interest, at a price which reflected the true value of the policies at the time of the sale. Because Sam's longevity was speculative, any price other than cash value at the time of sale would have been no more than a wager.[5] The estate realized the true market value of the policies and we find no error in overruling plaintiffs' objection to this transaction.

Judgment of the trial court overruling plaintiffs' objections to the sale of the insurance policies is affirmed. Judgment of

the trial court overruling plaintiffs' objection to the sale of the interest in the Shandel partnership is reversed and cause is remanded to the circuit court for reinstatement of the order of the probate court and for further hearing thereon.

DOWD, P.J., and GAERTNER, J., concur.

---

5. Presumably the policies could have been surrendered to the insurance companies. But the estate would have received only cash value in that instance also.